IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THEODORE TOPOLEWSKI, D.M.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | CASE NO. 3:10-1220 |
| ) | JUDGE SHARP/KNOWLES |
| ) | |
| ) | |
| QUORUM HEALTH RESOURCES, ) | |
| LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court upon Plaintiff's Motion for an Order compelling the production of documents sought by Plaintiff's Subpoena Duces Tecum directed to non-party Mark Williams. Docket No. 98. Plaintiff has filed a supporting Memorandum. Docket No. 100. Mr. Williams has filed a Response in opposition to the Motion (Docket No. 121), as has Defendant Coffee Medical Group, LLC d/b/a United Regional Medical Center ("URMC") (Docket No. 119).

Plaintiff is the former Chief Executive Officer of URMC. He avers that he was wrongfully terminated

> due to his discovery of, and refusal to remain silent about "substantial financial and accounting irregularities and fraudulent misuse of hospital funds for the benefit of select investors" at URMC, which "fraudulently overstated [URMC's] accounts receivable," and that URMC entered into various transactions that were not at "fair market value to the detriment of the hospital and the benefit of the executives and investors."

Docket No. 100, p. 2.

URMC denies the allegations made by Plaintiff regarding these transactions, denies that it engaged in any fraudulent behavior, and denies that it was involved in any illegal activity or attempts to perpetrate fraud on the United States government. Quorum Health Resources, LLC, one of the other Defendants, avers that Plaintiff's termination was due to the fact that "Plaintiff unilaterally terminated a severance contract with URMC's former CEO without consulting URMC's Board or management, resulting in a lawsuit and judgment against URMC."

According to Plaintiff, Mr. Williams was serving as URMC's legal counsel and had served as URMC's legal counsel during all relevant times alleged in the Complaint. Plaintiff states:

> As such, Mr. Williams presumably possesses records, books, ledgers, and other documents which memorialize or otherwise directly relate to the transactions referred to in the Complaint. Plaintiff's requests to Mr. Williams in the Subpoena also target documents related to the structure and nature of the relationships of the "executives and investors" of URMC and the other entities who were involved in the transactions discovered by Plaintiff which led to his termination as referenced in the Complaint. Finally, the requests seek information regarding invoices and notes receivable for Mr. Williams' services, which would enable Plaintiff to substantiate, compare, and confirm discrepancies uncovered by Plaintiff in URMC's accounts receivable and the accounts payable records.

Docket No. 100, p. 3.

Plaintiff, therefore, served the Subpoena at issue upon Mr. Williams, which has been filed as Docket No. 100-1. Mr. Williams objected to producing the requested documents, pursuant to Fed. R. Civ. P. 45(c)(2)(B). That Rule provides in relevant part as follows:

> Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or

attorney designated in the subpoena a written objection to
inspecting, copying, testing or sampling any or all of the materials
or to inspecting the premises – or to producing electronically
stored information in the form or forms requested.  The objection
must be served before the earlier of the time specified for
compliance or 14 days after the subpoena is served.  If an objection
is made, the following rules apply:

>(i) At any time on notice to the commanded person,
>the serving party may move the issuing court for an
>order compelling production or inspection.

>(ii) These acts may be required only as directed in
>the order, and the order must protect a person who
>is neither a party nor a party's officer from
>significant expense resulting from compliance.

In his objection, Mr. Williams stated in part as follows:

[T]he subpoena is overly broad and the documents requested have
no relevance to the actual lawsuit at issue.  Additionally, many of
the documents sought are protected by attorney-client privilege
and/or work product doctrine.  Most, if not all, of any non-
privileged documents should be available either publicly or from
the actual parties in the above referenced case.  As you know, the
inviolability of attorney-client privilege is one of the foundations
of our system of justice.  To attempt to separate the privileged
documents from the non-privileged documents in the legal files of
our firm would require extensive attorney time and effort which
would be unduly burdensome and result in significant expense.
Since any non-privileged documents should be available from a
party or publicly, it would be my position that the request made in
the subpoena, in addition to being overly broad, are unduly
burdensome.

Likewise, in addition to requiring extensive time for additional
review for privilege, the production of electronic documents in the
form demanded would impose significant and unreasonable burden
and expense.

Docket No. 100-3, p. 1-2.

In his Response to the instant Motion, Mr. Williams argues that the Subpoena is overly

3

Case 3:10-cv-01220   Document 192   Filed 01/08/13   Page 3 of 8 PageID #: 6897

broad both on its face and in substance, and that the documents requested have no relevance to the actual lawsuit at issue. He argues:

> The undersigned's law office is a small law office in a rural area with only four (4) lawyers and three (3) staff members. Consequently, as explained in the letter objecting to the Subpoena, to go through every file in the undersigned's law firm related to URMC and then attempt to determine what documents might be responsive to the vague Subpoena and then attempt to separate and catalog the privileged documents from the non-privileged documents would require extensive attorney time and effort which would be unduly burdensome and result in significant expense and lost earnings. Considering that most, if not all, of any non-privileged documents should be available either publicly, from the actual parties in the above referenced case or other sources, other less intrusive and burdensome measures were certainly available to the Plaintiff rendering this method both an undue burden and unreasonable.

Docket No. 121, p. 2.

As one noted authority has stated, "The person subject to the subpoena may raise an objection to production or inspection on any available legal ground, but the most common grounds are that the materials sought are irrelevant or privileged, or that complying with the subpoena is unduly burdensome or expensive . . . ." **Moore's Federal Practice 3d** § 45.41[1][c], p. 45-72.

The Subpoena at issue seeks the production of thirteen categories of documents, including electronically stored information. The material listed in the Subpoena comprises three pages, single-spaced. Docket No. 100-1, p. 3-5.

A brief review of the Subpoena indicates that it is completely overbroad and unduly burdensome. For example, Item 1 of the Subpoena is as follows:

> 1) Any and all documents relating to any contracts or agreements entered into by Coffee Medical Group, LLC d/b/a United Regional Medical Center ("URMC"),

4

including, but not limited to, all contracts, agreements, books of account, diaries, histories, notes, correspondence, letters, facsimiles, e-mail, papers, ledgers, memoranda, minutes, resolutions, telegrams, statements of witnesses or persons having knowledge of relevant facts, bills, checks, check stubs, receipts, invoices, vouchers, orders, business records, maps, charts, diagrams, blue prints, sketches, models, prototypes, audio or videotapes, computer disks or hard drives, and any tangible objects not otherwise described herein.

Item 2 of the Subpoena seeks "Any and all documents relating to any contracts or agreements entered into by investors in URMC . . . ."

Item 3 seeks "Any and all documents relating to any contracts or agreements by members of the Board of URMC . . . ."

Item 4 seeks "Any and all documents relating to the corporate governance of URMC, including "distribution of profits."

Incredibly, Item 6 seeks "Any and all documents relating to the corporate governance of any entities that have entered into agreements with URMC . . . ."

Item 7 seeks all bills and invoices for any legal services performed by Mr. Williams on behalf of URMC, any Board member or employees of URMC, and "any entity that employs or engages URMC employees and/or has UMRC [*sic*] investors as participants in the past five (5) years."

Only one of the Items, No. 7, contains a time limitation (and it is only a partial limitation).

A literal reading of the items requested in the Subpoena would require Mr. Williams to produce documents that have absolutely nothing to do with the issues in this lawsuit. For example, a fair reading of Item 1 would require the production of any utility bills of URMC. The boilerplate language of Item 1 also seeks documents relating to contracts or agreements

5

entered into by URMC, "including, but not limited to . . . statements of witnesses or persons having knowledge of relevant facts . . . ." This language is essentially incomprehensible. Item 2 likely would require the production of documents related to purchase of Google stock by an investor in URMC. Under Item 6, if URMC entered into a contract with a cleaning service, Mr. Williams would be required to produce corporate information regarding the cleaning service. Finally, Item 7 and 8, which relate to bills or invoices for legal services Mr. Williams performed appears to be completely improper.

A subpoena that is overbroad on its face may subject a person to undue burden. *See Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49-51 (S.D.N.Y. 1996) ("to the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable").

Plaintiff complains that Mr. Williams' argument that some of the documents are public is unavailing. He avers that Mr. Williams "cites no authority that holds a subpoenaed party can disregard a valid Subpoena simply because the documents are available elsewhere and Plaintiff knows of no less obtrusive means of obtaining the documents." Docket No. 100, p. 13. This argument strains credulity, however, because Fed. R. Civ. P. 26(b)(2)(C)(i) provides that the Court *must* limit the extent of discovery otherwise allowed if it determines that:

> the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. . . .

Thus, if the information is publicly available, the Court is required to limit its discovery from Mr. Williams.

6

Mr. Williams also raises a claim that the Subpoena seeks production of materials protected by the attorney-client privilege and/or the work product doctrine. Plaintiff argues that the Court should not consider this objection because Mr. Williams did not prepare a privilege log. The Court concludes that, under the circumstances present, no such privilege log was necessary.

As discussed above, Mr. Williams was URMC's legal counsel during all relevant times alleged in the Complaint. As one noted authority has stated:

> In general, a subpoena directed to opposing counsel in a pending action is improper, and is subject to a motion to quash or for a protective order. This is so because obtaining discovery or testimony from opposing counsel undermines the adversarial system and increases the time and cost of litigation, because questions of attorney-client privilege and work product protections are practically unavoidable when counsel becomes a witness.

**Moore's Federal Practice 3d** § 45.05[1][c][2], p. 45-36.

While Mr. Williams is not counsel of record for URMC in the case at bar, the same concerns are applicable to him as legal counsel for URMC. In fact, Plaintiff concedes as much, when he states that Mr. Williams served as URMC's legal counsel during all relevant times alleged in the Complaint, and that "[a]s such, Mr. Williams presumably possesses records, books, ledgers, and other documents which memorialize or otherwise directly relate to the transactions referred to in the Complaint." Docket No. 100, p. 3. A fair conclusion to be drawn from this argument is that Plaintiff has issued the instant Subpoena to Mr. Williams precisely because he is (or was) legal counsel for URMC. It is, therefore, imminently reasonable to presume that many, if not most, of the documents sought are protected. As Mr. Williams also argues, it would unduly burdensome for him to have to separate and catalog the privileged and

protected documents.

It is obvious that Plaintiff merely wishes to conduct a "fishing expedition" into the files of Mr. Williams. This is simply not permitted under the Federal Rules of Civil Procedure, particularly with regard to a person who is not a party to this lawsuit.

As discussed above, URMC also filed a Response in opposition to the instant Motion to Compel. Docket No. 119. Plaintiff argues that URMC does not have standing to "object" to the Subpoena served upon Mr. Williams. Docket No. 100, p. 11-12. The Court has not considered the Response of URMC and, therefore, it is unnecessary to address these issues.

For the foregoing reasons, the instant Motion (Docket No. 98) is DENIED.

IT IS SO ORDERED.

_____
E. Clifton Knowles
United States Magistrate Judge